**COMP**
John P. Aldrich, Esq.
Nevada Bar No. 6877
**ALDRICH LAW FIRM, LTD.**
1601 S. Rainbow Blvd, Suite 160
Las Vegas, Nevada 89146
Telephone: (702) 853-5490
Facsimile: (702) 227-1975
jaldrich@johnaldrichlawfirm.com

Richard A. Roth, Esq. *(pro hac to be submitted)*
Jordan M. Kam, Esq. *(pro hac to be submitted)*
**THE ROTH LAW FIRM, PLLC**
295 Madison Avenue, 22nd Fl.
New York, New York 10017
Telephone: (212) 542-8882
Facsimile: (212) 542-8883
rich@rrothlaw.com
jkam@rrothlaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| HAROLD KAPLAN, EDWARD FEIGHAN, JEFF WEINTRAUB, JIM LEES, JERRY HICKSON, WILL ALCORN, DAVID PERLMUTTER and SCOTT DUNLOP, <br><br> Plaintiffs, <br><br> v. <br><br> LIGHTYEAR NETWORK SOLUTIONS, INC., LY HOLDINGS LLC, CHRIS T. SULLIVAN, W. BRENT RICE, SHERMAN HENDERSON and RICK HUGHES, <br><br> Defendants. | CASE NO. <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Harold Kaplan ("Kaplan"), Edward Feighan ("Feighan"), Jeff Weintraub ("Weintraub"), Jim Lees ("Lees"), Jerry Hickson ("Hickson"), Will Alcorn ("Alcorn"), David Perlmutter ("Perlmutter") and Scott Dunlop ("Dunlap") (collective referred to herein as the "Plaintiffs"), by and through their undersigned attorneys, hereby submit this Complaint against

Lightyear Networks Solutions, Inc. ("Lightyear" or "the Company"), LY Holdings LLC ("LY Holdings"), Chris T. Sullivan ("Sullivan"), W. Brent Rice ("Rice"), Sherman Henderson ("Henderson") and Rich Hughes ("Hughes")(collectively referred to herein as the "Defendants") and state as follows:

## PRELIMINARY STATEMENT

Defendants engaged in a scheme to defraud Plaintiffs (who were at the time creditors of Lightyear) by inducing them under false pretenses to purchase and convert their promissory notes into equity. Then, contrary to Defendants' representations that an across-the-board debt to equity conversion of <u>all</u> note and long-term debt holders was to occur, Defendants sold Lightyear's assets for $22,000,000, thereby, among other things, clearing a path for the sole creditor (and majority shareholder) who did not convert (as promised), Defendant Sullivan, to satisfy approximately $6,250,000 in unconverted debt, in addition to the already approximately $3,500,000 that had previously been repaid to him in principal and interest. None of the Plaintiffs would have agreed to purchase and/or convert their notes to equity had they been informed that Sullivan was not going to similarly convert– so that the assets of the Company would be sold for the primary purpose of satisfying his debt. Defendants' conduct constitutes, among other things, securities fraud under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder.

Adding insult to injury, Defendants breached their fiduciary duty owed to Plaintiffs as shareholders, by, among other reasons stated below, agreeing, on unfavorable terms, to restructuring a note held by Lightyear against LY Holdings, LLC (an entity owned by Defendants Sullivan and Rice) which released a principal amount of approximately $1,223,203. Thus, in addition to running the Company for the primary purpose of paying down and

optimizing Sullivan's "debt" investment, the Defendants also inappropriately paid down an additional $6,250,000 (plus interest) of alleged debt to Sullivan while his company, LY Holdings, still owed Lightyear millions of dollars in principal and interest.

For the reasons set forth herein, Plaintiffs seek full repayment of their investment in Lightyear, in particular, their promissory notes (according to each notes' terms) that Plaintiffs were fraudulently induced to purchase and/or convert, together with punitive damages, interest, costs and attorneys' fees.

## PARTIES

1. Plaintiff Harold Kaplan is an individual residing in the State of Illinois.

2. Plaintiff Edward Feighan is an individual residing in the State of Ohio.

3. Plaintiff Jeff Weintraub is an individual residing in the State of Florida.

4. Plaintiff Jim Lees is an individual residing in State of Massachusetts.

5. Plaintiff Jerry Hickson is an individual residing in the State of Texas.

6. Plaintiff Will Acorn is an individual residing in the State of Tennessee.

7. Plaintiff David Perlmutter is an individual residing in Israel.

8. Plaintiff Scott Dunlop is an individual residing in the State of New Jersey.

9. Upon information and belief, Defendant Lightyear Network Solutions, Inc. is a corporation organized and existing under the laws of the State of Kentucky and then under the laws of the State of Nevada, with its principal place of business located at 1901 Eastpoint Parkway, Louisville, KY 40223.

10. Upon information and belief, LY Holdings is a limited liability company organized and existing under the laws of the State of Kentucky.

11. Upon information and belief, Defendant Chris T. Sullivan was at all relevant times a director for Lightyear.

12. Upon information and belief, Defendant W. Brent Rice was at all relevant times a director for Lightyear.

13. Upon information and belief, Sherman Henderson was at all relevant times a director for Lightyear.

14. Upon information and belief, Rich Hughes was at all relevant times a director and financial agent for Lightyear.

## JURISDICTION AND VENUE

15. This action arises under Sections 10(b) and 29(b) of the Securities Exchange Act of 1934. In addition, there is diversity of citizenship and this dispute exceeds the amount in controversy. The court's jurisdiction is invoked under 28 U.S.C.A. §§ 1331, 1332, 1337 and 1367.

16. Venue is proper in this district pursuant to contracts at issue in this case, which contain Nevada choice of law and United States District Court District of Nevada, Las Vegas, forum selection clauses.

## FACTUAL BACKGROUND

17. In 2009 and 2010 each of the Plaintiffs (and non-party Todd A. Prins) purchased for cash consideration exceeding $5 million certain 10% Convertible Promissory Notes which were subject to conversion into common stock of Lightyear. In addition to the so-called Round 1 and Round 2 Financings, Mr. Kaplan acquired in his IRA approximately 112,000 shares of Lightyear in exchange for consideration of approximately $392,000.

4

18. Upon information and belief, other than Plaintiffs and Mr. Prins, the only other significant debt/note holder was Mr. Sullivan, who was the holder of certain debt of $6,250,000 bearing interest at the three-month LIBOR rate plus 4% per annum and whose principal was due to be repaid at the January 10, 2013 maturity date (the "Sullivan Debt").

19. On or about December 18, 2009, Mr. Kaplan and Mr. Prins attended a meeting at the Lightyear office in Louisville, Kentucky, with Lightyear Board members Messrs. Sullivan, Rice and Henderson, as well as Mr. Hughes (the "December 18 Meeting").

20. At the December 18 Meeting, Mr. Hughes, on behalf of the Company and with authorization of all Defendants, gave a PowerPoint presentation laying out the Company's business plan and commitment to de-leverage the Company and execute a reverse-merger into a public shell (which was ultimately accomplished through Libra Alliance Corporation "Libra").It was expressly represented by Mr. Hughes that once the merger occurred the Company was to engage in a strategy of additive acquisitions in the telecommunications industry, largely through the use of its equity as consideration, taking advantage of the fact that, with the conversion to equity of the existing borrowed debt on the books, which was largely or exclusively held directly by or through affiliates of Mr. Sullivan (the "Sullivan Interests"), the Company would have little to no long-term debt encumbering the Company's balance sheet. In addition, it was represented that the debt to equity conversion of all note holders would align the interest of Mr. Sullivan, existing stockholders and new investors (such as Plaintiffs), so that each would enjoy an equal, parallel interest in the success of the Company. The fact that Mr. Sullivan had agreed to convert all of his debt to equity was a significant and highly material point made in the presentation.

21. In order to further demonstrate how the strategy outlined by Mr. Hughes would be accomplished, the PowerPoint presentation specifically indicated that a goal would be to

"restructure balance sheet" and thus indicated that as of October 31, 2009, the Company's "total long-term liabilities" were $20,840,015, but after taking into consideration the "RTO Adjustments" of $20,836,575, the Company's "total long-term liabilities" as of January 31, 2010 would be a virtually negligible $3,440 (the "PowerPoint Balance Sheet").

22. It was expressly stated at the December 18 Meeting that the Company's business strategy was based on all of the note and other debt holders converting their debt instruments to equity.

23. In late December 2009, Mr. Hughes, on behalf of the Board, contacted by telephone the remaining Plaintiffs who did not attend the December 18 Meeting, with the express purpose of convincing them to purchase and then convert their debt instruments to equity (the "Telephone Meetings").

24. By use of the telephone and the mail, Mr. Hughes, on behalf of the Board, made the same misleading representations as those made in the December 18 Meeting and provided the same misleading PowerPoint presentation (including the PowerPoint Balance Sheet) to Messrs. Weintraub, Feighan, Lees, Hickson, Alcorn, Perlmutter and Dunlop.

25. With respect to Mr. Feighan, Mr. Hughes was also joined on the call by Defendant Henderson. On that call, both Mr. Hughes and Mr. Henderson made repeated assurances to Mr. Feighan that the Sullivan Debt was being converted to equity.

26. Upon information and belief, the December 18 Meeting, PowerPoint Balance Sheet and the Telephone Meetings were designed by the Defendants with the specific intent to induce Plaintiffs to purchase the convertible promissory notes and mislead Plaintiffs into believing that all of the debt and note holders, including Mr. Sullivan, would convert their debt to equity.

27. Upon information and belief, at the time of the December 18 Meeting, the use of the PowerPoint Balance Sheet and the Telephone Meetings, Defendants knew that Mr. Sullivan had not committed to converting his debt to equity and had no intention of doing so.

28. Upon information and belief, the December 18 Meeting, the use of PowerPoint Balance Sheet and the Telephone Meetings were designed by the Defendants with the specific intent to leave Mr. Sullivan as the sole debt/note holder of Lightyear.

29. Upon information and belief, Mr. Sullivan's debt/note was secured by, among other things: (i) the personal guaranty of Defendant Henderson; (ii) a security agreement between an entity affiliated with Mr. Henderson and Mr. Sullivan whereby that entity granted to Mr. Sullivan a security interest in its membership interest in thirty percent of LY Holdings; and (iii) a security agreement between an entity affiliated with Defendant Rice and Mr. Sullivan whereby that entity granted to Mr. Sullivan a security interest in the entity's ten percent membership interest in LY Holdings.

30. Upon information and belief, at the time of Mr. Hughes' and Mr. Henderson's misleading and un-contradicted representations to Plaintiffs, each of the Defendants knew that the Board had no ability or intention of implementing the business plan identified at the December 18 Meeting, on the Telephone Meetings and as stated in the PowerPoint presentation; and instead, it was the intent of the Board to use Lightyear's assets – now supplemented by over $5 million from the Plaintiffs' note investments – to pay down "debt" to Mr. Sullivan, culminating in the sale of Lightyear's assets for the main purpose of satisfying Lightyear's debt to Mr. Sullivan.

31. Upon information and belief, Messrs. Sullivan, Rice and Henderson knew that Mr. Hughes' representations to Plaintiffs and his use of the PowerPoint Balance Sheet was misleading, and intended to mislead, but intentionally failed to inform the Plaintiffs.

32. Upon information and belief, Messrs. Hughes, Sullivan, Rice and Henderson conspired with each other and set about a concerted effort to continue to mislead Plaintiffs (who were creditors of Lightyear at the time) into converting their debt instruments into equity.

33. After the completion of the reverse merger, in February 2010, Mr. Hughes once again approached Plaintiffs for the purpose of implementing the strategy previously outlined by Defendants.

34. In February 2010, each of the Plaintiffs re-affirmed their commitment to the strategy outlined by the Defendants and thus executed documents, thereby converting their respective debt instruments into equity of the Company.

35. Each of the Plaintiffs relied on Mr. Hughes' (and in some cases, other Board members) representations and PowerPoint presentation, and the remaining Defendants' omissions with respect to the truth, in agreeing to execute documents converting their respective debt instruments into equity of the Company.

36. Pursuant to Defendants' wrongful scheme, Mr. Sullivan was the only Lightyear debt/noteholder who did not convert his debt instrument to equity.

37. The corporate business plan represented in the December 18 Meeting and the Telephone Meeting was never possible in light of Defendants' knowledge that Mr. Sullivan had no intention of converting all of his debt to equity, and thus said business plan was never attempted or implemented.

38. After Plaintiffs (and Mr. Prins) converted their debt instruments to equity, the Company was run primarily for the purpose of paying down and optimizing repayment of the Sullivan debt.

39. Upon information and belief, subsequent to February 2010, Mr. Sullivan received from the Company approximately $3,250,000 (or more) in repayment of principal and interest on the Sullivan debt.

40. Upon information and belief, subsequent to February 2010, the Company incurred bank debt of approximately $3,000,000 to $3,500,000 which was either unnecessary or could have been immediately repaid had Mr. Sullivan converted his debt instrument to equity, along with the other note holders, in February 2010 and not drained cash from the Company.

41. In or about the end of June or the beginning of July 2013, certain Plaintiffs, as Lightyear stockholders, learned for the first time that the Board: (i) recommended pursuant to a Schedule 14A Proxy Statement dated as of June 27, 2013(the "Proxy Statement"); and (ii) received by the time of a July 26, 2013 Special Meeting, approval of what was deemed to be a requisite number of Stockholders, to take certain actions, including, among other thing: (A) the sale of substantially all of the operating assets of Lightyear pursuant to an Asset Purchase Agreement with Birch Communications, Inc. for a gross purchase price of approximately $22,000,000 (the "Asset Sale"); and (B) adoption of a Plan of Dissolution, pursuant to which the Company would be liquidated, wound up and dissolved, contingent upon consummation of the Asset Sale.

42. Pursuant to the Proxy Statement, the Plaintiffs learned for the first time that Mr. Sullivan never converted the Sullivan debt to equity, as Defendants had led Plaintiffs to believe would be the case.

43. Pursuant to the Proxy Statement, the Plaintiffs also learned for the first time that Mr. Sullivan and his company, LY Holdings (which is also believed to be owned by Mr. Rice), would substantially benefit from the Asset Sale, including but not limited to, having the Sullivan debt fully repaid including all remaining interest, in an amount of no less than $6.5 million.

44. Also pursuant to the Proxy Statement, the Plaintiffs learned for the first time that an unidentified "former director" (believed to be Mr. Henderson) and an unidentified "current director" (believed to be Mr. Rice) had previously provided personal guarantees and/or security interests under the terms of the Sullivan Note, which would now be extinguished as a result of the Asset Sale and repayment of the Sullivan Note.

45. In September 2013, one of Plaintiffs, Mr. Kaplan, put the Company on notice of the Company's wrongful conduct and demanded repayment and rescission.

46. While Plaintiffs have each received distributions from the Asset Sale as stockholders of Lightyear, those distributions represent less than five percent of what they would have otherwise been entitled to pursuant to the terms of their original notes.

**AS AND FOR A FIRST CAUSE OF ACTION FOR
VIOLATION OF § 10(b) OF THE SECURITIES ACT OF 1934
AND RULE 10b-5 PROMULGATED THEREUNDER**

47. Plaintiffs repeat and re-allege each of the above paragraphs as if fully set forth herein in their entirety.

48. The material misrepresentations and omissions and acts aiding and abetting such misrepresentations and omissions described above, and by the use and the means of instrumentalities of interstate commerce and by use of the mails, on which Plaintiffs relied to their detriment, constitutes fraudulent and deceptive acts and practices by the Defendants, committed knowingly, intentionally and/or grossly negligently and with a deliberate and/or

reckless indifference to making an accurate, fair, balanced and non-misleading presentation to Plaintiffs, in violation of §10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder.

49. As a direct result of Defendants' securities fraud, committed with scienter, Plaintiffs have been injured in an amount to be determined at trial, but believed to be in excess of $6,000,000, exclusive of interest and all attorneys' fees and costs associated in prosecuting this action. As Defendants' actions were intentional and designed to deceive the Plaintiffs, Plaintiffs respectfully request an additional award of punitive damages.

### AS AND FOR A SECOND CAUSE OF ACTION FOR AIDING AND ABETTING VIOLATION OF § 10(b) OF THE SECURITIES ACT OF 1934 AND RULE 10b-5 PROMULGATED THEREUNDER

50. Plaintiffs repeat and re-allege each of the above paragraphs as if fully set forth herein in their entirety.

51. Defendants Sullivan, Rice and Henderson willfully provided substantial assistance, support and inducement to Hughes' primary violations of §10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder.

52. As a result, Defendants Sullivan, Rice and Henderson, to the extent they are found not liable as primary violators, are liable as aiders and abettors.

53. As a direct result of Defendants' wrongful conduct as stated above, Plaintiffs have been injured in an amount to be determined at trial, but believed to be in excess of $6,000,000, exclusive of interest and all attorneys' fees and costs associated in prosecuting this action. As Defendants' actions were intentional and designed to deceive the Plaintiffs, Plaintiffs respectfully request an additional award of punitive damages.

///

## AS AND FOR A THIRD CAUSE OF ACTION FOR
## COMMON LAW FRAUD

54. Plaintiffs repeat and re-allege each of the above paragraphs as if fully set forth herein in their entirety.

55. The material misrepresentations and omissions and acts aiding and abetting such misrepresentations and omissions described above, and by the use and the means of instrumentalities of interstate commerce and by use of the mails, on which Plaintiffs relied to their detriment, constitutes fraudulent and deceptive acts and practices by the Defendants, committed knowingly, intentionally and/or grossly negligently and with a deliberate and/or reckless indifference to making an accurate, fair, balanced and non-misleading presentation to Plaintiffs.

56. Plaintiffs relied on Defendants fraudulent misrepresentations and omissions to their detriment by agreeing to purchase and/or convert their debt instruments to equity.

57. As a direct result of Defendants' common law fraud, committed with scienter, Plaintiffs have been injured in an amount to be determined at trial, but believed to be in excess of $6,000,000, exclusive of interest and all attorneys' fees and costs associated in prosecuting this action. As Defendants' actions were intentional and designed to deceive the Plaintiffs, Plaintiffs respectfully request an additional award of punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR
## FRAUD IN THE INDUCEMENT

58. Plaintiffs repeat and re-allege each of the above paragraphs as if fully set forth herein in their entirety.

59. The material misrepresentations and omissions by the Defendants described above, which Plaintiffs relied on to their detriment, were fraudulent, and made with the intent to

mislead Plaintiffs and induce them into purchasing and/or converting their debt instruments into equity of Lightyear.

60. Defendants' motive to defraud the Plaintiffs was fueled by their intent to induce Plaintiffs' to relinquish their debt instruments so that Mr. Sullivan (a member of the Board and the largest shareholder of Lightyear) would be the sole debt holder of Lightyear and thus his debt would be satisfied in full pursuant to the Asset Sale.

61. As a direct result of Defendants' fraud in the inducement, Plaintiffs have been injured in an amount to be determined at trial, but believed to be in excess of $6,000,000, exclusive of interest and all attorneys' fees and costs associated in prosecuting this action. As Defendants' actions were intentional and designed to deceive the Plaintiffs, Plaintiffs respectfully request an additional award of punitive damages.

### AS AND FOR A FIFTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY

62. Plaintiffs repeat and re-allege each of the above paragraphs as if fully set forth herein in their entirety.

63. Defendants owed Plaintiffs a fiduciary duty at all times during the December 17 Meeting and Telephone Meetings since Defendants, as Board members to Lightyear, was in a special position of knowledge to that of Plaintiffs, who were at the time creditors of Lightyear, and of which Defendants knew Plaintiffs would be relying upon in deciding whether to convert their debt instruments to equity.

64. Defendants, as Board members of Lightyear, owed a fiduciary duty to the Company.

65. Defendants breached their fiduciary duty by, among other things: (i) intentionally misleading Plaintiffs, who were at the time creditors of Lightyear, into purchasing and/or

converting their debt instruments to equity; (ii) failing to cause the conversion or take legal action against Mr. Sullivan for his failure to convert his debt to equity in February 2010, as represented to all note holders, on behalf of all Defendants, including Mr. Sullivan; (iii) agreeing to satisfy the Sullivan Note and other debt after Mr. Sullivan's refusal to convert his debt instrument to equity as Defendants had previously represented; (iv) unnecessarily incurring bank debt of up to $3,500,000; (v) agreeing to amend the Sullivan Note and other debt on unfavorable terms to the Company; and (iv) failing and refusing to cease the distribution of monies obtained from the Asset Sale notwithstanding Defendants having been put on notice of Plaintiffs' claims in September 2013.

66. As a direct result of Defendants' breach of fiduciary duty, Plaintiffs have been injured in an amount to be determined at trial, but believed to be in excess of $6,000,000, exclusive of interest and all attorneys' fees and costs associated in prosecuting this action. As Defendants' actions were intentional and designed to deceive the Plaintiffs, Plaintiffs respectfully request an additional award of punitive damages.

### AS AND FOR A SIXTH CAUSE OF ACTION FOR UNJUST ENRICHMENT

67. Plaintiffs repeat and re-allege each of the above paragraphs as if fully set forth herein in their entirety.

68. As a result of Defendants fraudulent representations and material omissions as stated above, all Defendants have received proceeds of the Asset Sale that rightfully belongs to Plaintiffs.

69. As an additional result of Defendants fraudulent representations and material omission as stated above, guarantors of the Sullivan debt (believed to be Mr. Henderson) and

assets pledged as a form of security of the Sullivan debt (a beneficiary of such is believed to be Mr. Rice), have been unjustly relieved at Plaintiffs' expense.

70. As a direct result of Defendants' wrongful conduct as stated above, Plaintiffs have been injured in an amount to be determined at trial, but believed to be in excess of $6,000,000, exclusive of interest and all attorneys' fees and costs associated in prosecuting this action. As Defendants' actions were intentional and designed to deceive the Plaintiffs, Plaintiffs respectfully request an additional award of punitive damages.

### AS AND FOR A SEVENTH CAUSE OF ACTION FOR RECISSION AND RESCISSIONARY DAMAGES

71. Plaintiffs repeat and re-allege each of the above paragraphs as if fully set forth herein in their entirety.

72. As a result of the Defendants' fraudulent conduct as stated above, Plaintiffs seek rescission of all contracts converting their debt instruments to equity.

73. In light of the Company and the Board's actual notice that rescission was demanded prior to the disbursements of the Asset Sale proceeds, and the Company and the Board chose to ignore such demand, in the event the status quo with respect Plaintiffs' demand for rescission cannot be restored, the Company and each member of the Board should be held jointly and severally liable for any monetary damages relating thereto.

**WHEREFORE**, Plaintiffs respectfully request the relief sought herein, together with any other relief that the Court deems just and proper.

///

///

///

///

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated this 15th day of December, 2014.

        **ALDRICH LAW FIRM, LTD.**

        */s/ John P. Aldrich*
        John P. Aldrich, Esq.
        1601 S. Rainbow Blvd., Suite 160
        Las Vegas, NV 89146
        Telephone: (702) 853-5490
        Facsimile: (702) 227-1975
        *jaldrich@johnaldrichlawfirm.com*

        Richard A. Roth, Esq. *(pro hac to be submitted)*
        Jordan M. Kam, Esq. *(pro hac to be submitted)*
        **THE ROTH LAW FIRM, PLLC**
        295 Madison Avenue, 22nd Fl.
        New York, New York 10017
        Telephone: (212) 542-8882
        Facsimile: (212) 542-8883
        *rich@rrothlaw.com*
        *jkam@rrothlaw.com*

        ***Counsel for Plaintiff***